STATE OF IOWA, appellee, v. DALE CHRISTIANSEN LEISS, appellant.

No. 51924.

(Reported in 140 N.W.2d 172)

FEBRUARY 8, 1966.

Arthur J. Crawford, of Fort Dodge, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Francis E. Tierney, County Attorney, and Mark McCormick, Assistant County Attorney, for appellee.

LARSON, J.—Appellant was charged with one of the most despicable crimes against society, that of lascivious acts with a minor child, in violation of section 725.2 of the 1962 Code of Iowa. He was tried to a jury, found guilty, and sentenced to a term in the reformatory at Anamosa of not to exceed three years. He appeals. We affirm.

While no useful purpose could be accomplished by a recitation of the evidence relating to the crime, including the testimony of the ten-year-old girl and her brother a year older, we must observe at the outset the testimony which the jury evidently believed was sufficient to sustain a conviction of assault with intent to commit rape under section 698.4 of the Code, which carries a penalty of not to exceed twenty years in the penitentiary. It, therefore, seems the county attorney had some compassion for appellant when he filed the information under which appellant was tried. The trial court apparently thought so too for it sentenced him to the maximum penalty under section 725.2.

Nevertheless, appellant must be furnished a fair trial and,

if errors were made below, he should have a new trial. We, therefore, consider the errors assigned and review the matter to see that the previous proceedings did not deprive him of that right.

Appellant assigns as error the following: (1) In accepting into evidence his oral statements made to the police officers when he was taken into custody and a written statement taken from him at that time, on the ground that they were involuntary and were taken in violation of the due process clause of both the Federal Constitution, Amendments 5, 6 and 14, and the State Constitution, Article I, sections 9 and 10; (2) in refusing to submit the question of involuntariness of defendant's admissions and confession to the jury; and (3) in permitting such misconduct on the part of the county attorney as to deprive defendant of a fair trial. We shall consider the second assignment first.

I. Prior to trial defendant requested a separate hearing to determine whether the admissions and written statement given the officers at the Fort Dodge police station on the night of his apprehension were voluntary and admissible. The hearing was granted and the trial court carefully considered the objections raised and held the admissions and confession were voluntary and admissible evidence.

 At that time this court had not announced its position as to the procedure trial courts should follow in order to comply with the requirements of separate hearings announced in Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed.2d 908, 1 A. L. R.3d 1205. Since then we have adopted the so-called "orthodox" rule rather than the "Massachusetts" rule, as our method of determining the question of voluntariness. See State v. Holland, 258 Iowa 206, 215, 138 N.W.2d 86, 91, and State v. Tharp, 258 Iowa 224, 138 N.W.2d 78. Appellant conceded in oral argument his contention that the jury should have considered that issue has been decided adverse to him. Under the rule we have adopted in Holland, the trial "court's determination of admissibility is final", and, if admitted, the weight to be given that evidence is left to the jury in the main trial. If the court determines the admissions and confession were involuntary, they are excluded and do not go before the jury. See comment on Jackson v. Denno in 50 Iowa Law Review 909 to 917.

■ II. Appellant contends the trial court erred in its determination that his admissions and confession were voluntary and admissible. He maintains the circumstances of his arrest and confinement prior to his arraignment require a finding that his oral and written statements were not voluntary. We, therefore, must examine the testimony in that regard. According to the record it appears the chief detective of the Fort Dodge police department, acting upon information contained in a preliminary information and statements given him by the complaining witness and her mother, went to the defendant's home located just outside the city limits of Fort Dodge, asked defendant about the charge, falsely advised him he had a warrant for his arrest, and "told him he was going to have to go with me to the police station."

Prior to his interrogation at the station the officer testified he advised appellant that he did not have to say anything, that he had a right to counsel, and that "what he would tell me could be used in court as evidence." After the interrogation the officer asked defendant if he would be willing to put what he had said in writing. Appellant advised the officer he could not read or write too well, but agreed to sign a statement if the officer typed it. When the statement was finished, another officer was called in, the statement was read to appellant, and he signed it saying it was true to the best of his knowledge. Both officers witnessed his signature and the statement was introduced into evidence as State's Exhibit 1.

■ In passing on the contentions of defendant that his admissions and statement were not admissible because he was not in legal custody, the trial court held the issue of voluntariness was not dependent upon whether he was legally arrested, that, if it appeared defendant voluntarily gave the statement, it is admissible whether he was legally arrested prior thereto.

· The trial court also properly found defendant had been told of his right to counsel, that access to counsel was never denied him, and that Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, did not apply. It nevertheless gave consideration to the fact that defendant did not have counsel, and that he was of limited intellect and restrained at the time, in determin-

ing whether his confession was voluntary. Its conclusion that "Despite all the circumstances urged by defendant, the court is abidingly convinced beyond reasonable doubt that defendant did make the admissions and give the confession voluntarily" must be sustained.

III. Of course, evidence of statements obtained by force or duress are not admissible in the trial of one accused of a crime. But in the absence of statutory prohibitions, which we do not have, the test is not whether the statements are taken by officers before or after an arrest, but as we have often said, the sole test in this jurisdiction is whether the admissions or confessions were made freely and voluntarily without compulsion or inducement of any kind. State v. Fox, 257 Iowa 174, 178, 131 N.W.2d 684, 686, and citations; State v. Tharp, supra; State v. Williams, 245 Iowa 494, 500, 62 N.W.2d 742, and citations; State v. Shephard, 255 Iowa 1218, 1228, 124 N.W.2d 712.

Recent decisions by the Supreme Court of the United States have injected additional constitutional considerations which must be recognized by the trial court in passing on the admissibility of such admissions. Escobedo v. Illinois, supra. These rights were recognized and observed here as indicated in Division II.

Thus, the trial court correctly submitted the issue of voluntariness of the admissions and confession to the jury for its consideration only as to the weight to be accorded them, and to allow the jury to pass upon the credibility of the witnesses who testified regarding them. There was no error in this assignment.

IV. That appellant had been duly and timely advised of his rights to counsel, to remain silent, and that anything he said could be used in court, and understood their import, even though he was somewhat mentally retarded and illiterate, cannot be seriously questioned. Although a clinical psychologist, called on behalf of defendant, testified defendant was mentally defective on the intelligence scale, with an I. Q. of 68, and found his basic adjustment level for reading and arithmetic to be at about the first or second grade level, it also appeared defendant had taken and passed a driver's license test, had been able to hold a steady job, had been married, and was the father of one child. There

was no showing he did not understand the import of the alleged offense or the questions asked him. We are convinced he could and did distinguish right from wrong and that the evidence would sustain a finding to that effect.

V. We next consider appellant's alleged error in overruling his motion for a new trial due to misconduct of the county attorney. He claims the county attorney, in substance, stated in argument to the jury, "I want the jury to remember when the question of the written statement is brought up, the difficulty defendant had in lying." Defendant objected to the statement as prejudicial.

We may agree with counsel that prosecuting attorneys should not be allowed to make inflammatory or prejudicial statements regarding a defendant in a criminal action, but we do not believe this language falls into that category. While it is true, words such as "liar", "crook" and "pathological liar" in rebuttal arguments to the jury have been frowned upon, we have found no instance where the statement by the prosecutor that defendant was lying has been held so prejudicial as to warrant a new trial on that ground alone. Counsel could cite us no such authority. As bearing on the problem he cites Fox v. Bellon (N. D.), 136 N.W.2d 134, 141; 53 Am. Jur., Trial, section 502; and 88 C. J. S., Trial, section 196b.

In the Fox case the court recognized that "counsel in his argument had the right to analyze the testimony and the exhibits and to point out to the jury any reason or reasons why he thought the witness was not worthy of belief; * * *." The court there was critical of the trial court in not instructing on the language used or to the effect that it should be wholly disregarded, but the majority felt, in the absence of a showing of actual prejudice, the decision of the trial court not to grant a new trial on this basis should not be disturbed.

In the matter before us the trial court said, "whether or not the defendant was lying lies particularly and peculiarly within the province of the jury." It recognized "counsel for both sides has the right in argument to make such comments about the testimony, the motives actuating the witnesses to testify, as they believe the record shows." Within reason we can agree, and when

the court did instruct here that "any statements that counsel makes by way of argument to you are simply what he believes the evidence to be and what connotation he believes or what weight he believes should be placed upon that evidence", we think it was sufficient. There was no attempt made to show the statement prejudiced defendant. We are satisfied under this record the court's discretion in its admonishment to the jury was not abused.

VI. Having found no reversible error, the conviction and judgment must be affirmed.—Affirmed.

GARFIELD, C. J., and SNELL, MOORE and STUART, JJ., concur.

RAWLINGS, THORNTON and BECKER, JJ., dissent.

MASON, J., dissents generally.

RAWLINGS, J.—I respectfully dissent.

I. Having in his possession a preliminary information only, but with no arrest warrant having been issued, a Fort Dodge police officer at about 9:00 p.m., went to defendant's home located outside the city limits, and there arrested him. Sections 755.1, 755.2 and 755.7, Code, 1962; Hobbs v. Illinois Central R. Co., 182 Iowa 316, 339–342, 165 N.W. 912; Norton v. Mathers, 222 Iowa 1170, 1178, 271 N.W. 321; United States v. Scott, 149 F. Supp. 837, 840; Price v. United States, D. C., 119 A.2d 718, 719; and Swetnam v. F. W. Woolworth Company, 83 Ariz. 189, 318 P.2d 364, 366. The officer admits having then stated to defendant that he, the officer, had a warrant for arrest of defendant which representation was false.

No offense had been committed by defendant in the presence of this or any other officer.

Unquestionably defendant was a person of low mentality, having an I. Q. of 68, and was illiterate.

Without being first advised as to any of his fundamental rights, defendant was questioned at some length by the officer in the police car. At that time defendant denied guilt, was then taken to the Fort Dodge Police Station, and there again interrogated at length. He still denied guilt of the offense with which the officer accused him but, according to the officer, gave self-

incriminatory statements as to prior familiarities with the child here concerned. More on this later.

No showing is made of any effort to take defendant before a magistrate, without unnecessary delay, and no reason appears for failing to do so.

Section 758.1, Code, 1962, provides as follows: "758.1 Disposition of prisoner. When an arrest is made without a warrant, the person arrested shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and the grounds on which the arrest was made shall be stated to the magistrate by affidavit, subscribed and sworn to by the person making the statement, in the same manner as upon a preliminary information, as nearly as may be."

This is comparable to rule 5(a), Federal Rules of Criminal Procedure.

Then section 758.2, Code, 1962, provides: "758.2 Hearing before magistrate. If the magistrate believes from the statements in the affidavit that the offense charged is triable in the county in which the arrest was made, and there is sufficient ground for a trial or preliminary examination, as the case may require, and it will not be inconvenient for the witnesses on the part of the state that it should be had before him, he shall proceed as if the person arrested had been brought before him on arrest under a warrant, and, if the case be one within his jurisdiction to try and determine, shall order an information to be filed against him."

These Iowa laws have a wholesome and clear-cut purpose. As was said of rule 5(a), Federal Rules of Criminal Procedure, in McNabb v. United States, 318 U. S. 332, 343, 344, 63 S. Ct. 608, 614, 87 L. Ed. 819, 825:

"The purpose of this impressively pervasive requirement of criminal procedure is plain. * * * The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. Legislation such as this, requiring that the

police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime."

With due regard for any prior holdings of this court to the contrary, I honestly believe the case at hand demonstrates a need for strict compliance with sections 758.1 and 758.2 of the Code. See Mallory v. United States, 354 U. S. 449, 450–455, 77 S. Ct. 1356, 1357–1359, 1 L. Ed.2d 1479; Morales v. United States (9 Cir.), 344 F.2d 846, 851; and Norton v. Mathers, 222 Iowa 1170, 1176, 271 N.W. 321.

II. But there is another factor in this case which is even more disturbing.

As aforesaid defendant was questioned extensively in the police car before being taken to the station. Clearly, any investigation had then focused on defendant. The proceedings had reached an accusatory stage. Escobedo v. Illinois, 378 U. S. 478, 485, 84 S. Ct. 1758, 1762, 12 L. Ed.2d 977. However, defendant was not at that time advised as to his right to remain silent, to have advice of counsel, or the effect of any statements he might make. In fact the record fails to disclose he was advised of any constitutional rights until after arrival at the station. Stated otherwise he was not timely advised.

During the critical period of interrogation in the police car, defendant denied guilt but a denial of guilt during interrogation before being advised as to rights, followed by confession or admissions after such advice, can be most damaging. Among other things, it serves to create inconsistencies which the prosecution may and usually does bring out on trial, with appropriate comments by the prosecution.

At the station defendant was for the first time told that what he might say could be used in court as evidence, and of his

right to employ counsel. At that point defendant said nothing, and without waiting for or securing any answer the officer proceeded to question defendant at length. It is at best difficult to find an intelligent waiver by defendant of all fundamental rights, and particularly his right to remain silent. Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106; Escobedo v. Illinois, supra, 378 U. S. at 491, 84 S. Ct. at 1765, 12 L. Ed.2d at 986; Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653; Watts v. Indiana, 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801; United States ex rel. Russo v. New Jersey (3 Cir.), 351 F.2d 429; and State v. Breaker, 178 Neb. 887, 136 N.W.2d 161. See also State v. Turner, Ore., 404 P.2d 187; People v. Schader, 62 Cal.2d 716, 44 Cal. Rptr. 193, 401 P.2d 665; People v. Dorado, 62 Cal.2d 338, 42 Cal. Rptr. 169, 398 P.2d 361; and State v. Neely, 239 Ore. 487, 395 P.2d 557, 398 P.2d 482.

The good faith of the arresting officer, the trial court, and the majority of this court is beyond question. However, the totality of the circumstances in this case leaves me no alternative but to express disapproval of the procedures adopted by the police officer, and the admission of defendant's claimed confession.

It is my opinion defendant's motion for a new trial should have been sustained.

JUSTICES THORNTON and BECKER join in this dissent.